**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 14-cv-01415-MSK-NYW

HAROLD E. MASON,

      Plaintiff,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

      Defendant.

---

**ORDER ON ADMINISTRATIVE RECORD**

---

**THIS MATTER** comes before the Court for review of Reliance Standard Life Insurance

Company's ("Reliance") denial of long term disability benefits to Plaintiff, Harold E. Mason,

under an insurance plan governed by the Employment Retirement Income Security Act of 1974,

28 U.S.C. § 1001, *et seq.* ("ERISA"). The parties filed an Administrative Record (**#23**) and a

joint motion for a ruling on that Record (**#35**) which reflected the parties' agreement that the

matter should be determined on the briefs (**#24, 30, 34**).[1]

---

[1] Also at issue is Mr. Mason's Motion to Supplement the Administrative Record (**#17**),
Reliance's Response (**#18**), and Mr. Mason's Reply (**#19**). Mr. Mason requested the Court
permit him to supplement the record to add information relevant to what Mr. Mason perceives as
a new argument raised by Reliance in the joint Scheduling Order (**#16**). He believes that a new
issue of whether  Mr. Mason would be limited to only twenty four months of benefits due to a
provision in his insurance policy that limits benefits for disabilities caused by alcoholism has
been raised. In response, Reliance represents that it denied benefits outright without any reliance
on the 24 month limitation provision. Because this issue was not the basis of denial of benefits,
the Court may not address it, and therefore there is no need to supplement the record. The
Motion to Supplement the Record (**#17**) is therefore **DENIED.**

## JURISDICTION

The parties agree that the Plaintiff's claim is governed by ERISA and the Court exercises subject matter jurisdiction pursuant to 29 U.S.C. § 1132(a)(1)(B).

## ADMINISTRATIVE RECORD

LSI Corporation (LSI) is Mr. Mason's employer. In that capacity, LSI provided Mr. Mason with long-term disability and life insurance through a policy issued by Reliance (the Policy). Under the terms of the Policy, Mr. Mason is eligible for long-term disability benefits if, due to injury or sickness, he cannot perform his "regular occupation."  However, the Policy delays the onset of benefits for a 364-day "Elimination Period," during which Mr. Mason must remain "totally disabled."  As discussed herein, each of the quoted terms is a source of friction between the parties.

Mr. Mason was the Director of Industry Marketing at LSI. Pursuant to his job description, he was required to represent LSI in meetings and public forums, support marketing efforts, exhibit leadership in promoting LSI products, maintain membership in over fifty groups, lead funding for research programs, forecast budgets, and communicate and speak at industry events. Some 50-80% of Mr. Mason's job involved traveling. For example, in 2007, Mr. Mason travelled upwards of 66,000 miles. During conferences and traveling, Mr. Mason's job required some minimal physical activity and considerable mental and cognitive abilities.

Although Mr. Mason has an extensive medical history, the Court only summarizes pertinent portions here. Beginning in 2007, Mr. Mason was diagnosed with viral hepatitis (hepatitis B) and chronic cirrhosis of the liver. In mid to late 2008, Mr. Mason's doctor noted that Mr. Mason also showed signs of coronary artery disease. In 2009, Mr. Mason experienced fevers, coughs, abdominal pain, pleural effusion, and other complications from the liver

cirrhosis. These symptoms continued through at least 2011, primarily as fevers, pleural effusion, diarrhea, nausea, and vomiting, all of which required multiple hospitalizations. In 2011, his treating physician, Dr. Karen Cesario, noted that from a statistically perspective, that it was likely that he would need a liver transplant.

Due to his health conditions, Mr. Mason stopped working on July 26, 2012 and applied for benefits under the Policy.  This triggered the advent of the 364-day Elimination Period. Mr. Mason states that he was no longer able to perform his job due to fevers, nausea, diarrhea, fatigue, and inability to concentrate or manage stress.  His medical condition during the 364-day elimination period is summarized below.

- August 21, 2012: Dr. Cesario noted that Mr. Mason suffered from "severe fatigue, hepatic encephalopathy/ slowed thinking, frequent volume overload."

- August 23, 2012: Dr. John Campbell observed irregularities in Mr. Mason's liver as well as a thickened gallbladder wall and polyp.

- September 11, 2012: Dr. Eric Whiting observed "severe cirrhosis" and "severe portal hypertension," with manifestations including "edema and mild bowel wall thickening."

- October 1, 2012: Dr. Cesario noted that Mr. Mason had "increasing problems with an umbilical hernia," was experiencing fatigue, and "has struggled with frequent nausea and bilateral severe leg swelling."

- November 15, 2012: Dr. Cesario wrote that Mr. Mason was experiencing portal hypertension and polyps were found in his stomach.

- December 4, 2012: Dr. Cesario reported that Mr. Mason was experiencing fatigue, and indicated that his past complications include "non-bleeding esophageal varices, fatigue, muscle wasting, and hepatic hydrothrax."

- April 1, 2013: Dr. Michael Pitman observed a new lobe and irregular contour of Mr. Mason's liver, chronic inflammatory changes, and recommended further evaluation.

- April 25, 2013: Dr. Timothy Cloonan found that Mr. Mason had an enlarged spleen, a cyst in his lower kidney, and "abnormal nodular contour of the liver."

Dr. Cesario also completed a form for Reliance on June 6, 2013 describing Mr. Mason's condition. She noted that Mr. Mason's first visit occurred in November 2010, and his latest visit was April 2, 2013. During that time Dr. Cesario wrote that Mr. Mason experienced "volume overload, shortness of breath, and altered mental state." Her "objective diagnoses" include "hyperammonemia, hepatic hydrothorax, edema, anemia," and she indicated that Mr. Mason's altered mental state further contributed to his disability. She opined that Mr. Mason should only stand, sit, or walk for 1-3 hours per day and could only carry up to 10 pounds, that is, should only perform fully sedentary work. On July 7, 2013, Dr. Cesario submitted an additional letter to Reliance, in which she represented that Mr. Mason suffers from "chronic nausea, vomiting and fatigue which mandate a strict diet and many breaks." She stated that Mr. Mason's "hepatic encephalopathy causes cognitive changes which would make [him] an undependable employee," and moreover, his immunosuppression makes him susceptible to infections thus he is unable to travel or be around groups of people. She explained that his disease is chronic and progressive.

Reliance determined that Mr. Mason failed to show that he was totally disabled throughout the 364-day Elimination Period, July 26, 2012 – July 26, 2013. Reliance's file reflects an entry on July 16, 2013 (approximately one year after Mr. Mason stopped working)

4

that reads "deny claim [because] the medical [record] on file does not support total disability at date of loss." Reliance notified Mr. Mason that his claim was denied, Mr. Mason appealed the denial, and Reliance referred his appeal to its Quality Review Unit for an "independent" review.

As part of this review, Reliance sought to conduct an in-person medical examination of Mr. Mason, but Mr. Mason was unable to attend because he was hospitalized on that date. Reliance did not reschedule the examination, and apparently decided to forego it altogether. Instead, it retained Dr. Manoj Mehta to conduct a record review of Mr. Mason's medical records. Relying only on the record review, Reliance denied Mr. Mason's appeal on March 18, 2014.  In its  letter  of that day, Reliance incorporated Dr. Mehta's findings and conclusions:

- Mr. Mason experienced significant adverse changes to his health after July 2013, and was "clearly not able to travel or work . . . at this point in time [*i.e.* March 2014]," but there had been no "acute change" in Mr. Mason's health status in July 2012 that would suddenly render him unable to perform his job.

- The "one and only issue which might functionally affect him is progression of portal hypertension, ascites, and subsequently hepatic hydrothorax and pericardial effusion."

- Mr. Mason has travelled "continuously without any specific impairment, although he alleges he is unable to travel for work," and "has demonstrated the ability to travel in contradiction to his claims of inability."

- Dr. Cesario's assertion that Mr. Mason suffered from a cognitive deficit due to hepatic encephalopathy is unreliable because it "is not substantiated based on any of the objective medical records." (It does not appear that Dr. Mehta disagreed with the general proposition that hepatic encephalopathy could cause cognitive impairments.  Rather, it appears that Dr. Mehta simply disagreed with Dr. Cesario's diagnosis of Mr. Mason has

suffering from hepatic encephalopathy.  That is, Dr. Mehta asserts that there was no

independent "documentation that he suffered from encephalopathy," such as "clinical

notes.")

- Mr. Mason's "lengthy documentation of the appeals process . . . speaks to a high

  cognitive ability. . ."

- "There is no full-time work incapacity supported as of July 2012. Specifically, [Mr.

  Mason] would be able to function at a light-duty capacity, exerting up to 20 pounds of

  force occasionally or 10 pounds of force frequently."

Dr. Mehta's report also includes several additional observations that Reliance may have relied

upon, but did not cite in its denial letter:

- Mr. Mason suffered from hepatic hydrothorax dating back to 2009.  Dr. Cesario indicated

  that Mr. Mason also had ongoing hepatic encephalopathy (which can cause cognitive

  difficulties) but it is not "clearly" referenced in the medical records.

- Mr. Mason reported fatigue, but not neurological issues.

- Based on the timeline of his medical records, "one could infer that [Mr. Mason] has

  become sicker and sicker and at some point has been unable to work" and that his

  condition is a "disease with indolent progression," but that Mr. Mason shows "little

  disease on [his] liver biopsy."

Reliance ultimately concluded that although Mr. Mason "had diagnoses and complaints,

there was no support of [his] claimed inability to continue working as of July 2012 and beyond."

Consequently, it denied long term benefits after the Elimination Period had passed.

## STANDARD OF REVIEW

28 U.S.C. § 1132(a)(1)(B) permits a beneficiary of an ERISA-governed insurance plan to bring a suit to recover benefits due under the terms of the plan. In *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 110-11 (2008), the Supreme Court summarized the standard of review employed by courts in such suits: (i) the court must conduct a *de novo* review of the determination unless the plan provides to the contrary; (ii) if the plan provides discretionary authority to the plan administrator to make eligibility determinations, the court should instead apply a deferential arbitrary and capricious standard of review; and (iii) if the plan administrator is operating under a conflict of interest, the nature and extent of that conflict must be "weighed as a factor" in determining whether the plan administrator abused his or her discretion. *See Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231-32 (10th Cir. 2012). The weight to be given to the plan administrator's conflict of interest is necessarily case-specific, and is informed by the severity of the conflict and the clarity of the other factors contributing to the decision. *Glenn*, 554 U.S. at 117-19; *see Nelson v. Aetna Life Ins. Co.*, 568 Fed. App'x 615, 620-21 (10th Cir., June 18, 2014).

If a court determines that the arbitrary and capricious standard applies, it will reverse a determination on benefits only if it is not supported by substantial evidence, the plan administrator's construction of policy language is unreasonable, or was made in bad faith. *See Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009). Under this standard, a determination need not be the best or only logical resolution, but it must be reasonably supported by the record. *Nance v. Sun Life Assur. Co.*, 294 F.3d 1263, 1269 (10th Cir. 2002).

The Court's review is limited to the materials compiled by the administrator in the course of making its decision – that is, to the administrative record. *See Cardoza v. United of Omaha*

*Life Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013). A court considers only the specific grounds upon which the administrator relied in the administrative denial of benefits, not alternative justifications that the administrator could have, but did not, rely upon. *Spradley v. Owens-Ill. Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1141 (10th Cir. 2012).

Here, the Policy grants Reliance discretionary authority to interpret the Policy and determine eligibility for benefits. The parties therefore agree that the arbitrary and capricious standard applies.

## ANALYSIS

Mr. Mason contends that Reliance's denial of long term disability benefits on the basis that Mr. Mason was not continually totally disabled during the duration of the 364-day Elimination Period was arbitrary and capricious. Particularly, he argues that Reliance (1) did not properly interpret or apply the terms of the Policy and (2) did not fully review or properly weigh the evidence.

### A. Interpretation of the Policy Language

Mr. Mason argues that Reliance misinterpreted two Policy terms: (1) "Total Disability," as that term is defined during the Elimination Period and (2) "Regular Occupation."

There is no dispute that the Policy grants Reliance "the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." Where, as here, an insurer is also the plan administrator, a court will weigh that conflict of interest in determining whether an interpretation of terms in a policy is arbitrary and capricious. *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1011 (10th Cir. 2008); *see Conkright v. Frommert*, 599 U.S. 506, 527-29 (2010). *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 956-57 (1989). An interpretation of the terms in a plan is arbitrary and capricious if it unreasonable

based on the plain language in the plan, made in bad faith, or severely undermines the policy

concerns underlying ERISA. *Torix v. Ball Corp.*, 862 F.2d 1428, 1429 (10th Cir. 1988); *see*

*Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1214 (10th Cir. 2006); *Kinstler v. First*

*Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d. Cir. 1999).

    1.  "Total Disability" during the Elimination Period

    Mr. Mason first argues that Reliance misinterpreted the language of the Policy and failed

to treat a Partial Disability or Residual Disability during the Elimination Period as a Total

Disability. The relevant Policy clause reads as follows:

> "'Totally Disabled' and 'Total Disability' mean, that as a result of an Injury or
> Sickness:
>> (1) During the Elimination Period, an Insured cannot perform the material
>> duties of his/her Regular Occupation;
>>> (a) 'Partially Disabled' and 'Partial Disability' mean that as a
>>> result of an Injury or Sickness an Insured is capable of
>>> performing the material duties of his/her Regular Occupation
>>> on a part time basis or some of the material duties on a full
>>> time basis. An Insured who is partially disabled will be
>>> considered Totally Disabled, except during the Elimination
>>> Period;
>>> (b) 'Residual Disability' means being Partially Disabled during the
>>> Elimination Period. Residual Disability will be considered
>>> Total Disability; and
>> (2) After the Elimination Period, an Insured cannot perform the material
>> duties of any occupation…" [2]

    Mr. Mason focuses on the provisions of sub-paragraph (1)(b). He argues that under this

provision "Residual Disability" is the equivalent of Partial Disability during the Elimination

Period, and that Residual Disability is expressly defined as Total Disability.  Thus, he argues, a

showing of only partial disability during the Elimination Period suffices to entitle him to

benefits.

---

[2]    Notably, the Court's review of the Policy in the record reveals no other instance of the
term "Residual Disability" being used in another provision.  Whatever purpose the Policy has in
addressing the concept of a "Residual Disability," the quoted text appears to be the entirety of it.

Reliance offers no interpretation of sub-paragraph (1)(b), nor argues why it does not apply here.  Instead, it focuses on sub-paragraph (1)(a)'s statement that Partial Disability is treated as being Totally Disabled, except during the Elimination Period.  Reliance's application of this Policy provision is, however, a bit unclear. It informed Mr. Mason that he was not entitled to benefits because he could not show Total Disability at the time he ceased working, but Reliance never addressed whether it considered him to be Partially Disabled or what it believed the Policy required in such circumstance. This lack of clarity is highlighted in a footnote in Reliance's Responsive brief that reads "Because Reliance determined that Plaintiff was capable of performing all the material duties of his occupation on a full time basis, he cannot be considered totally disabled **or partially disabled**."  (Emphasis added.)  In actuality, Reliance determined that Mr. Mason's medical records did not show that he was **unable to perform all of his duties** as of the time he ceased working (or, at the advent of the 364-day Elimination Period) – *i.e.* that he was not totally disabled.

The Policy provision at issue is circular, arguably inconsistent, and the Court finds its meaning perplexing. Indeed, every interpretation that the Court has examined runs afoul of one or more general rules for contract interpretation. Two obvious approaches are illustrative.

 If one begins with subsection (1)(b), the first sentence could be read as a definition of the term "Residual Disability," establishing that that term is synonymous with the phrase "being Partially Disability during the Elimination Period."  Applying the reflexive property, one could thus substitute one phrase for the other in the second sentence of (1)(b), causing that sentence to read "Being Partially Disabled during the Elimination Period will be considered Total Disability."  This would allow Mr. Mason to qualify for benefits merely by showing that he was partially disabled during the Elimination Period.  But, of course, this statement directly

contradicts the final sentence of subsection (1)(a), which clearly states that an insured who is Partially Disabled during the Elimination Period  is not considered to be Totally Disabled.  Thus, this construction runs afoul of the canon that the Court should strive to construe contract terms harmoniously with each other, avoiding inconsistencies.  *See e.g. Bledsoe Land Co. v. Forest Oil Corp.*, 277 P.3d 838, 846 (Colo.App. 2011).

Alternatively, attempting to read the last sentence of subsection 1(a) and all of subsection 1(b) in harmony could entail conforming the latter to the former.  According to sub-paragraph (1)(a), a claimant who has only a Partial Disability is treated as if he or she had a Total Disability, except during the Elimination Period.  The first sentence of subsection 1(b) equates "Residual Disability" with "Partial Disability during the Elimination Period."  Perhaps the second sentence of subsection 1(b) thus intends to distinguish itself temporally from the preceding sentence.  In other words, the second sentence of subsection 1(b) should be understood to mean "[After the Elimination Period has expired,] Residual Disability will be considered Total Disability."  Such a construction brings subsection 1(b) into harmony with subsection 1(a), but to a fault.  Construed in this way, subsection 1(b) adds nothing of significance: its first sentence simply sets up a definition, and its second sentence repeats precisely the same concept embodied in the last sentence of subsection 1(a) – that Partial Disability during the elimination period is not Total Disability.  This violates the traditional canon of construction that the Court should avoid contractual interpretations that render a provision superfluous.  *Id.*  (It also requires the Court to read a prefatory phrase into the second sentence of subsection 1(b) that does not exist.)

Because there is no clear meaning to the provisions found in subsection 1(a) and 1(b), it is incumbent upon Reliance to construe those provisions and, more importantly, to articulate what that construction is.  The current record does not reflect whether Reliance did so (and if so,

how it construed those provisions).  The issue is one of significance, as it may be that Mr. Mason could arguably qualify for benefits if partial disability, rather than total disability, is all that is required.  Accordingly, vacatur of Reliance's decision and remand for further consideration is required.

    2.  "Regular Occupation"

The Policy defines "Regular Occupation" as "the occupation the Insured is routinely performing when Total Disability begins. We will look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer for a specific location."

By its terms, this provision does not require Reliance to consider unique aspects of Mr. Mason's job.  A vocational rehabilitation specialist consulted the U.S. Department of Labor's Dictionary of Occupational Titles and determined that, in the national economy, Mr. Mason's position was most closely identified as a "sales-service promoter" or a "sales engineer."  A "sales-service promoter" is one who "promotes sales and creates goodwill for firm's products by . . . touring country, [and] making speeches at retail dealer conventions."

Mr. Mason contends that Reliance's consultation of the Department of Labor's Dictionary of Occupation Titles was arbitrary and capricious because Reliance's choices of comparative occupations – sales service provider and sales engineer – were not comparable to his job.[3] The thrust of his argument is that Reliance erred in failing to consider that his job required extensive travel.

---

[3] A "sales engineer" sells electronic products and provides technical services to clients. The Court agrees that this is not substantially reflective of Mr. Mason's job, although he has an engineering background. However, because "sales-service promoter" is, for purposes of analyzing Mr. Mason's claim for benefits, a sufficient description of his job, the Court does not consider this discrepancy material.

Travel is clearly included in the definition of sales-service promoter ("touring country"), and the record reflects that Reliance heavily considered Mr. Mason's need to travel.  For example, Dr. Mehta observed that "Mr. Mason has traveled extensively as part of his job requirements." Therefore, the Court finds that Reliance was not arbitrary and capricious in interpreting or applying the Policy language with regard to Mr. Mason's material duties.

Mr. Mason nevertheless contends that, despite the Policy's language, Reliance was nevertheless required to consider the unique duties of his profession. He directs the Court to cases requiring consideration of a claimant's individual duties. *See Bishop v. Long Term Disability Income Plan of SAP Am., Inc.*, 232 Fed. App'x 792, 795 (10th Cir., May 7, 2007); *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002); *Kitsler*, 181 F.3d at 252; *Rodden v. Jefferson Pilot Fin. Ins. Co.*, 591 F.Supp.2d 1113, 1124 (N.D. Cal. 2008). However, these cases did not involve plans that specifically defined "Regular Occupation" as the job as it is normally performed in the national economy. Under the Policy's terms here, Reliance is expressly not required to consider Mr. Mason's particular duties.  Thus, the Court is not persuaded by Mr. Mason's argument. Reliance's construction of Mr. Mason's Regular Occupation was therefore not arbitrary and capricious.

**B.  Evidentiary Analysis**

Mr. Mason argues that Reliance did not properly consider, weigh, interpret, or apply the evidence presented, and, thus, denial of benefits was arbitrary and capricious. Specifically, he complains that Reliance did not give due credit to the evidence of: (a) his symptoms and the progressive nature of his illness; (b) statements by his colleagues regarding his ability to perform his job; and (c) the finding of the Social Security Administration (SSA) that Mr. Mason's illness

rendered him disabled and unable to work. The Court understands this argument to be that Reliance's denial of benefits was not supported by substantial evidence.

Under an arbitrary and capricious standard, a court examines only whether a plan administrator's denial of benefits was reasonable in light of the available evidence. *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1133 (10th Cir. 2011). A court may give less deference to a denial of benefits if the plan administrator was operating under an inherent conflict of interest, and a lack of substantial evidence to support findings may make a denial unreasonable. *Adamson*, 455 F.3d at 1212-13; *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1002-03 (10th Cir. 2004); *Bishop*, 232 Fed. App'x at 795. Substantial evidence is evidence which a reasonable mind might accept as adequate to support the conclusion reached – it is more than a scintilla but less than a preponderance. *Rekstad v. U.S. Bancorp.*, 451 F.3d 1114, 1119-20 (10th Cir. 2006).

There is no requirement that a plan administrator scour every single record, medical or otherwise, pertaining to a claim. *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 806-07 (10th Cir. 2004). Courts may not impose requirements on plan administrators to give particular evidence certain weight. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). A plan administrator is not required, for example, to give special weight to the opinions of a claimant's treating physician. *Id.* at 833. However, plan administrators are required to consider and credit a claimant's relevant and reliable evidence, and a failure to do so may serve as indicia that denial of benefits was unreasonable. *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002). A plan administrator cannot ignore readily available information pertaining to the claimant's ability to do his job, particularly when there is little evidence in the record to refute the claimant's position. *Gaither v. Aetna Life Ins .Co.*, 394 F.3d 792, 807 (10th Cir. 2004).

Moreover, evidence that a claimant is unable to perform his job need not be furnished by a medical professional to warrant consideration. *Rekstad*, 451 F.3d at 1121.

By means of illustration, although a plan administrator need not accept all opinions of a claimant's doctors, it may be unreasonable for the administrator to credit the opinion of its own doctor who reviewed records over opinions by treating physicians without sufficient explanation. *See Zhou v. Metro. Life Ins. Co.*, 807 F.Supp.2d 458, 473-74 (D. Md. 2011). It may also be unreasonable for a plan administrator to disregard nonmedical evidence, such as letters from a claimant's family, or for a plan administrator to fail to contact an employer to learn the reasons for a claimant's leave of absence from work. *Rekstad*, 451 F.3d. at 1121; *Gaither*, 394 F.3d at 806.

With these legal standards in mind, the Court turns to the evidence considered by Reliance relative to the Elimination Period – July 2012 through July 2013. Reliance's inquiry was whether Mr. Mason could perform the material duties of his regular job as it is typically performed in the national economy. Reliance's reason for denying Mr. Mason benefits was that, although Mr. Mason had physical impairments before and after the Elimination Period, the evidence did not show Total Disability beginning when he stopped working and continuing throughout the Elimination Period.

Pursuant to Reliance's own definition, Mr. Mason would be required to present sufficient evidence to show that he was unable to perform the material duties of a "sales service provider." Those duties are: (1) promoting sales and goodwill by preparing displays; (2) touring the country; (3) making speeches at conferences; advising individual merchants on ways to increase sales; and (4) in some instances possessing and calling upon technical and engineering knowledge. Physical requirements include lifting, carrying, pushing, or pulling up to 20 pounds

occasionally and 10 pounds frequently as well as regular walking or standing.  Implicitly, the job also requires regular cognitive functioning.

The Court therefore examines whether there is substantial evidence the Mr. Mason was capable of performing these duties. To support its denial of benefits, Reliance primarily relied upon the opinions of Dr. Mehta, who performed a medical record review, but did not examine Mr. Mason.

First, Dr. Mehta made several findings related to Mr. Mason's cognitive abilities which the Court presumes suggest that Dr. Mehta assumed Mr. Mason was still able to perform the non-physical aspects of his job: namely, drawing on his technical knowledge to represent his company at conferences, making speeches, and promoting products. Dr. Mehta's report does not address these duties specifically, but concluded that Mr. Mason did not suffer any cognitive deficiencies as a result of his physical illnesses. In so finding, Dr. Mehta acknowledged that, in a July 11, 2013 letter, Mr. Mason's treating physician, Dr. Cesario states that Mr. Mason suffered from "hepatic encephalopathy which causes cognitive changes which would make [Mr. Mason] an undependable employee." Dr.Mehta does not appear to dispute that hepatic encephalopathy causes cognitive difficulties. However, he finds that Dr. Cesario's diagnosis should be discredited because she did not report hepatic encephalopathy in any of her previous clinical notes, and the diagnosis does not otherwise appear in Mr. Mason's past medical records. Dr. Mehta's finding, however, either ignores or disregards an August 21, 2012 form completed by Dr. Cesario, on which she reported that Mr. Mason suffered from "severe fatigue, hepatic encephalopathy/ slowed thinking, frequent volume overload."[4]

---

[4] Reliance dismisses this report because Dr. Cesario does not state exactly when these symptoms occurred. The Court finds this to be unreasonable, given that the report lists the date of the last visit as March 2012 and the next visit as October 2012, suggesting that these symptoms were occurring sometime during this time frame. Moreover, the Court notes that Reliance was willing

Dr. Mehta acknowledges letters of support from Mr. Mason's colleagues that also attest to Mr. Mason suffering cognitive deficits.  Reliance and Dr. Mehta dismissed this evidence, however, because it was "not substantiated based on any of the objective medical records." Second, Dr. Mehta's statement that there are no medical records supporting cognitive difficulties is misleading. For example, in August of 2012 Dr. Cesario reported "slowed thinking," in June of 2013, she noted that Mr. Mason experienced an "altered mental state," and in July of 2013, she opined that Mr. Mason's cognitive difficulties likely make him an undependable employee.[5] Moreover, objective medical evidence is not necessarily required, especially to demonstrate subjective symptoms.

Second, Dr. Mehta concluded that Mr. Mason did not suffer from significant physical impairments that would hinder his ability to perform the material duties of his job, particularly, the frequent standing and walking that was required. Particularly, Dr. Mehta concluded that Mr. Mason's only physical symptom was fatigue.[6] Dr. Mehta does not address other reported symptoms, particularly, Dr. Cesario's October 1, 2012 visit notes reporting that Mr. Mason "has struggled with frequent nausea and severe leg swelling."  Dr. Cesario also noted Mr. Mason's suppressed immune system that made him susceptible to infections, making travel or attendance

---

to assume that Dr. Cesario's statement that Mr. Mason "has been travelling extensively," which the Court finds to be equally, if not more, vague in terms of identifying a temporal context, was applicable to the Elimination Period. Reliance cannot presume a time frame in one instance, but refuse to do so in another.

[5] The Court recognizes that these reports were made by Dr. Cesario specifically in support of Mr. Mason's receipt of long-term disability benefits, rather than as contemporaneous observations made during normal treatment of Mr. Mason. Nevertheless, they are still medical evidence specific to Mr. Mason's ability to perform his job.

[6] Dr. Mehta identifies reported "muscle-wasting," but discredits it because Mr. Mason appeared to remain a constant weight. The Court has little concern for whether or not Mr. Mason was likely affected by muscle-wasting, however, as it does not appear pertinent to his ability to perform any of the material duties of his occupation, most of which required minimal physical strength.

at meetings or large conventions impractical.  These symptoms would presumably affect Mr.

Mason's ability to frequently stand, walk, make speeches, and promote LSI products.

The Court finds the analysis in *Zhou v. Metropolitan Life Ins. Co.*, 807 F.Supp.2d 458,

particularly useful. There, the court determined that the denial of benefits was arbitrary and

capricious under similar circumstances to those presented here. In *Zhou*, the claimant sought

long-term disability benefits for depressive disorder that caused him to experience headaches,

dizziness, and insomnia, and made concentrating and memory difficult. The plan administrator

denied benefits on the basis that the claimant failed to present sufficient evidence that he could

not perform the duties of his occupation. The court found that the denial was unreasonable

because the insurer failed to "fully and fairly consider the medical opinions and diagnoses of

Plaintiff's treating physicians or conduct an independent medical examination." Particularly, the

court noted that when a claimant's symptoms are largely subjective, an independent medical

exam is especially warranted. Moreover, the court concluded that it was not reasonable for an

insurer to rely on the fact that there were no acute changes in the claimant's status and that the

claimant was described as "stable," because this did not necessarily pertain to whether the

claimant was able to work. In Mr. Mason's case, Reliance relied upon highly similar facts,

including that Mr. Mason's disease was stable and that he did not present objective evidence of

somewhat subjective symptoms, such as cognitive problems. Reliance, like the plan

administrator in *Zhou*, also accepted the findings of a reviewing doctor who did not perform an

independent medical examination over those of the claimant's doctors.

The Court additionally finds Dr. Mehta's conclusion that Mr. Mason was able to travel,

which was required by the duties of his Regular Occupation, particularly problematic. Dr. Mehta

relies heavily on his determination that Mr. Mason could still travel as of July 2012. In fact, he

expresses his belief that Mr. Mason's representation that he could not travel was insincere at least three times throughout his report. For example, Dr. Mehta noted that Mr. Mason "traveled continuously without any specific impairment, although he alleges he cannot travel for work," "demonstrated the ability to travel," and "alleges that he has been unable to travel and unable to meet his demanding work schedule. However, his records indicate over several years that he continues extensive travel, including elective travel . . . if he is unable to ravel for work, I cannot foresee how he could make the argument that he is well enough to travel for social purposes." Dr. Mehta based these statements findings seemingly entirely on Dr. Cesario's notes from a December 2012 visit with Mr. Mason, in which she indicated that he "has been travelling quite extensively." There is no indication, however, as to what time period "has been" refers to, and other evidence suggests that Dr. Cesario's reference to "has been travelling" was related to travel by Mr. Mason some months prior to the start of the Elimination Period. Particularly, Mr. Mason's frequent flyer account show a sharp decrease in travel beginning in mid-2012. Dr. Mehta also cited the fact that Mr. Mason travelled to South America on sabbatical in 2010 as evidence contradicting Mr. Mason's claimed inability to travel.   The Court finds that this trip bears no weight, given that it was some two years before Mr. Mason stopped working. Given the degree to which Dr. Mehta relied on his conclusion that Mr. Mason could in fact travel, which the Court finds is not based on substantial evidence, a remand is necessary to allow Reliance to re-evaluate Mr. Mason's ability to travel from July 2012 through July 2013.

In sum, Dr. Mehta did not challenge the majority of Mr. Mason's doctors' physical diagnoses[7]; rather, he suggests that as they relate to Mr. Mason's ability to perform the duties of

---

[7] The Court does not discount Dr. Mehta's cautionary statement to the effect that courts should avoid assuming that a claimant is unable to work based only on seemingly severe diagnoses. However, in this case there is some indication that Mr. Mason's diagnosed conditions did result

his job beginning in July 2012, nothing rendered Mr. Mason unable to work.  The Court, however, finds this somewhat inconsistent with Dr. Mehta's recognition that Mr. Mason has become "sicker and sicker." Ultimately, Dr. Mehta concluded that as of July 2012, Mr. Mason could still perform light-duty work, including lifting up to 20 pounds of force.[8] Dr. Mehta did not, however, address Mr. Mason's fatigue and how this might affect his ability to perform "light-duty work," nor did he opine as to whether Mr. Mason was capable of regularly working full days. Moreover, Dr. Mehta does not explain why he rejected Dr. Cesario's somewhat contradictory conclusion: that Mr. Mason was only capable of performing fully sedentary work (that is, lifting no more than 10 pounds), that Mr. Mason should only sit or stand for some 1-3 hours per day, and that he required frequent breaks. Nevertheless, Reliance accepted Dr. Mehta's findings over Dr. Cesario's without explanation and the Court cannot find that alone, these findings constitute substantial evidence to support a denial of benefits.

As an additional matter, Mr. Mason contends that Reliance was required to consider the fact that the SSA granted his claim for disability benefits. Though the Court is persuaded that Reliance's failure to properly weigh the evidence supplied by Mr. Mason warrants remand, to the extent that the question of whether Reliance must consider that the SSA's decision to grant Mr. Mason's claim might arise on remand, the Court addresses, and rejects, it. Reliance need not place significant weight on the fact that Mr. Mason was eligible for social security given the different standards and requirements that are necessary for social security benefits versus long-term disability benefits as prescribed by the particular provisions and definitions of Mr. Mason's Policy. *See Nord*, 538 U.S. at 833-34.

---

in physical and cognitive symptoms that would hinder Mr. Mason's ability to perform the material duties of his job, which Reliance must consider on remand.

[8] The Court is unable to determine exactly how Dr. Mehta reached this opinion.

Here, whether Mr. Mason experienced cognitive deficiencies, could perform only sedentary work (and for how long he could do so), and could travel all relate directly to material duties of his Regular Occupation, even as Reliance defines that occupation. Reliance's dismissal of evidence of symptoms and limitations experienced by Mr. Mason during the Elimination Period was precursory, and the court cannot say that the denial was otherwise supported by substantial evidence. Therefore, for the foregoing reasons, the Court finds that Mr. Mason has demonstrated that Reliance's denial of benefits is not supported by substantial evidence and therefore was arbitrary and capricious.

## V. CONCLUSION

The Court reverses and remands for determination by the plan administrator, and with instructions to articulate the interpretation given to Policy terms, fully consider the evidence that was readily available, particularly as it relates to Mr. Mason's ability to perform the material duties of his occupation from July 2012 – July 2013. Judgment shall enter in favor of Mr. Mason vacating Reliance's denial of benefits and remanding for further consideration, and the Clerk shall thereafter close this case.

Dated this 30th day of September, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge